## THE EQUITABLE ENDOWMENT ASSOCIATION *vs.* JAMES C. FISHER.

*Master and Servant—Proof of Contract of Employment— Corporation—Powers of its Officers—General authority.*

Although a paper writing containing a contract for employment contains no stipulation binding the employé to accept the appointment therein, or to perform its duties, if he does accept it, and perform the duties he will be entitled to the promised compensation.

Such contract may be proved by progressive steps and a paper writing not containing full evidence of the contract and its acceptance and performance is admissible in evidence as part of the chain of proof.

Where the officers of a corporation who were held out to the public as having a general authority, which would comprehend the employment by them of a general manager for the corporation, although no such officer was known to its constitution or by-laws; and such officers appointed F. to be such general manager, without communicating to him their want of authority to do so, and there was evidence that the paper making such appointment was

Equitable Endowment Association *vs.* Fisher.

shown to the president of the corporation, and such appointment was accepted by F.; the same will bind the corporation, and render it liable to F. in an action brought against it by him for being improperly discharged.

APPEAL from the Court of Common Pleas.

The appellee sued the appellant, a corporation of the District of Columbia, doing business in Maryland, for an alleged breach of a contract to employ him as general manager for the Industrial Branch Insurance of the defendant for the term of two years, from the 21st of February, 1887, upon the terms stated in the contract. The declaration alleged that the plaintiff entered upon the discharge of his duties under said contract, and continued faithfully to perform the same until the 31st of March, 1888, when he was wrongfully discharged by the defendant.

*First Exception.* The plaintiff offered in evidence the contract sued on, which it was agreed should be treated as a paper not under the seal of the defendant. The contract is as follows:

EQUITABLE ENDOWMENT ASSOCIATION,

*Office,* 220 *Four and Half Street, N. W.*

BALTIMORE, February 21st, 1887.

We, the undersigned, do hereby agree to employ Mr. James C. Fisher, as general manager for the Industrial Branch Insurance of the Equitable Endowment Association, to continue for a term of two years from date; to be paid a salary of (*sixteen dollars*) $16.00 per week for the first three months, thereafter salary to be increased according to increase of business, also to employ and dismiss all and any (*sb.*) agents at pleasure, we to reserve the rights at any and all times.

This agreement to be null and void should Mr. Jas. C. Fisher, at any time or place, give his time or labor to any other business whatsoever.

(Place of Seal.)        Agreement is considered binding on all parties concerned in the Equitable Endowment Association.

(Place of Seal of the                          SAMUEL CEAS,
Equitable Association.)                              Gen. Agt.

(Signed)        AUG. RODER,
. State Agt.

J. C. FISHER.

The defendant objected to the admissibility of this paper, but the Court (DUFFY, J.) overruled the objection, and the defendant excepted.

*Second Exception.* After further evidence, the nature and tenor of which are stated in the opinion of the Court, the plaintiff offered nine prayers, the third of which was rejected, and is omitted.

1. That if the jury find from the evidence that the defendant is a corporation doing business in the State of Maryland; that on the 21st day of February, 1887, witnesses, Samuel Ceas and August Roder, were respectively the duly appointed general agent and State agent of the defendant; that on the said 21st day of February, 1887, the said Ceas and Roder, for and on behalf of the defendant, did execute the contract shown in evidence, together with the plaintiff, then the said contract is binding upon the defendant; and if the jury shall further find that by the terms of said contract the plaintiff was employed to act as general manager for the Industrial Branch Insurance of the defendant for the term of two years, from February 21st, 1887, at a salary of $16.00 per week; that the plaintiff did enter into the discharge of the duties of general manager as aforesaid, and continued in the service of the defendant until he

was discharged; if the jury shall find that the plaintiff was discharged therefrom by the defendant or its duly authorized agent before the expiration of the aforesaid term of two years; that before the institution of this suit, the plaintiff offered and tendered to continue to serve the defendant in the capacity of general manager for the Industrial Branch Insurance of the defendant until the expiration of the aforesaid term of two years; that while in the service of the defendant, if they shall so find, the plaintiff devoted his entire time and labor to the duties of his said position, and did faithfully perform the same, then the plaintiff was entitled to institute this suit at the time it was brought, and their verdict must be for the plaintiff.

2. That if the jury shall find from the evidence that the defendant is a corporation, doing business in the State of Maryland, that at any time since the 21st of February, 1887, and before the institution of this suit, the contract shown in evidence has been adopted and recognized by the defendant or its officers, or the plaintiff was treated by it, or them, as an agent of the defendant under the said contract, then the said contract is binding upon the defendant; that by the terms of said contract the plaintiff was employed to act as general manager for the Industrial Branch Insurance of the defendant, for the term of two years, from February 21st, 1887, at a salary of $16.00 per week; that the plaintiff did enter into the discharge of the duties of general manager as aforesaid, and did faithfully and efficiently perform the duties of said position, and did give his entire time and attention thereto; that the plaintiff offered and tendered to serve the defendant in the position of general manager as aforesaid until February 21st, 1889, but the defendant refused to allow the plaintiff so to do and discharged him from its service before the said 21st of February, 1889, then their verdict must be for the plaintiff.

4. If the jury believe from the evidence that the plaintiff was employed by the defendant, under the contract shown in evidence, and that he entered into the discharge of his duties under said contract, and continued to discharge the same until the 10th day of March, 1888, and that he was discharged on that day by the defendant, or its duly authorized agent, then they are not to consider any evidence of misconduct on the part of the plaintiff, subsequent to that time, as affecting his right to recover in this action.

5. If the jury believe from the evidence that the plaintiff was employed by the defendant under the contract shown in evidence, and that he entered into the discharge of his duties under said contract, and continued to discharge the same until the 31st day of March, 1888, and that he was discharged on that day by the defendant or its duly authorized agent, then they are not to consider any evidence of misconduct on the part of the plaintiff subsequent to that time as affecting his right to recover in this action.

6. That the by-laws of the defendant, shown in evidence, cannot affect the right of the plaintiff to recover in this action.

7. That the incorporation of the defendant is admitted in this case.

8. If the jury believe that witnesses, Samuel Ceas and August Roder, were duly appointed by the defendant as its general agent and State agent, respectively; that the contract shown in evidence was signed by the said general agent and State agent for and on behalf of the defendant; that the plaintiff did not know, and had no reason to know, that the said agents were not authorized to make said contract, but accepted the same under the belief that the defendant was bound thereby, then the said contract is binding upon the plaintiff.

9. If the jury find for the plaintiff under the instructions of the Court, then the plaintiff is entitled to re-

cover his whole salary under the contract from the time he was unpaid, if they shall find that he was not paid up to February 21st, 1889, less the amount they may find the plaintiff has earned since his discharge, up to February 21st, 1889, or less the amount the plaintiff might have earned by reasonable industry and diligence within said time.

The defendant offered the following prayers:

1. That there is no legally sufficient evidence to support the first count of the declaration, and the plaintiff is not entitled to recover on said count.

2. That the contract offered in evidence is not the contract of the defendant, and the plaintiff is not entitled to recover.

3. That in the alleged contract offered in evidence, there is no obligation or promise on the part of the plaintiff to perform any services for the defendant for the period of two years, and on the pleadings and evidence the plaintiff is not entitled to recover.

4. That there is no legally sufficient evidence that the said Ceas and Roder were authorized to execute the contract offered in evidence, and the plaintiff is not entitled to recover, unless the jury find that, with a previous knowledge of all material facts and circumstances, the defendant ratified and adopted the same.

5. That although the jury may find that the plaintiff was employed in the manner testified to by him, yet if they find that he was fully paid up to the time of his discharge, he is not entitled to recover unless they further find that such discharge was wrongful and without cause.

6. That it was the duty of the plaintiff under the contract offered in evidence to serve the defendant faithfully, and to refrain from doing any act knowingly and willfully which might affect injuriously the business of the defendant, and if he failed to perform his duty in any

such respect, the defendant had a right to discharge him and he is not entitled to recover.

7. That if the plaintiff without excuse conducted himself generally toward his superior officer and co-employés in such a way as to interfere with the harmonious transaction of business, and to render it injurious to the interest of the defendant to retain him in its service, then the defendant had a right to discharge him, and he is not entitled to recover.

8. That if the jury find from the evidence that the plaintiff, while in the service of the defendant, called upon any of the policy holders of the defendant and collected dues from any such policy holder while he (the plaintiff) was in such a state of intoxication as to make such policy holder uneasy as to the safety of the money so paid; or while in such service made an effort to get one of the policy holders of the defendant to withdraw from said company and to go into another, and stated to such policy holder that the defendant company was "no good;" or that while in such service, and during the business hours of the day, and while plaintiff had official duties to perform, the said plaintiff passed several hours in a saloon playing cards and drinking, and so became intoxicated, and that upon other occasions the plaintiff became so intoxicated as to neglect the performance of his duties, then the defendant had a right to discharge him, and he is not entitled to recover.

9. That even if the jury should find under the instructions of the Court that the plaintiff was wrongfully discharged, it was nevertheless the duty of the plaintiff not to remain idle, but to use every reasonable effort to procure employment, and the jury should deduct from such amount of salary as they find to have been unpaid, such sums as the plaintiff earned in any other employment, and also any further sums which in their judgment he might have earned by due and reasonable industry and diligence.

10. That on the pleadings and evidence, even if the jury find that plaintiff was discharged on the 10th of March, 1888, yet, if they further find, that whatever trouble or difficulty then existed was smoothed over and settled, and it was arranged that plaintiff should go back to his work, and that plaintiff did thereupon return to his service under said contract to said defendant, and so continued for several weeks, and drawing his salary of $16.00 per week, until the 31st of March, 1888, then the affair of March 10th, 1888, is not to be regarded so far as the same relates to the period or fact of discharge sued on.

And the defendant offered the following special exception to the plaintiff's second prayer:

That there is no legally sufficient evidence of any adoption or ratification by defendant of the contract offered in evidence.

The Court granted the prayers of the plaintiff, except the third, which was rejected, and granted the first, fifth, sixth, seventh, eighth, ninth, and tenth prayers of the defendant, and rejected its second, third, and fourth prayers. The defendant excepted, and the verdict and judgment being against it, appealed.

The cause was argued before ALVEY, C. J., STONE, MILLER, ROBINSON, and BRYAN, J.

*Henry W. Fox,* and *Albert Ritchie,* for the appellant.

*Benjamin E. P. Crampton,* for the appellee.

BRYAN, J., delivered the opinion of the Court.

It was averred in the *narr.* that the defendant employed the plaintiff as its general manager for the term of two years, and that the plaintiff entered upon the discharge of his duties under the contract, and continued

faithfully to perform them until the defendant wrongfully dismissed him from its service. It is true that the paper-writing offered in evidence contained no stipulation which bound the plaintiff to accept the appointment therein, or to perform its duties; but nevertheless if he did accept it and perform the duties, it would be strange if he were not entitled to the promised compensation. If one should say to a laborer, "if you will work in my fields for a month, I will pay you twenty dollars," and the laborer should accordingly work that length of time, it would be impossible to say that he had not earned the money. And it could make no possible difference whether the offer of employment were in writing, or by word of mouth. It would not be a contract until accepted and agreed to by the laborer; but doing the work in pursuance of the proposal is as unequivocal an assent to it, as could be imagined. In *Norton vs. Cowell*, 65 *Md.*, 359, the contract was proved by a letter written by the defendant, and assented to by the plaintiff. It was necessary for the plaintiff to prove, not only the execution of the paper-writing, but also that it was authorized by the defendant, and that its terms were accepted and performed by the plaintiff. But all this evidence could not be offered *uno flatu*. It was necessary to proceed by progressive steps, and the initial step naturally was the proof of the execution. We think, therefore, that there was no error in the first exception.

The evidence in the cause tended to show that the paper was signed by Ceas as general agent, and Roder as State agent, and that the plaintiff entered the service of the defendant, and discharged the duties of general manager of its business, and that he was dismissed from its service in March, 1888. There is some uncertainty from the proof whether the dismissal is to be considered as having taken place on the tenth or the thirty-first day

of the month; although his salary was paid up to the latter date. The evidence was conflicting on the question whether the plaintiff was dismissed rightfully or wrongfully. It was shown by the proof that Ceas and Roder exceeded their powers when they employed the plaintiff as general manager, and that no such officer was known to the constitution and by-laws of the defendant; although both Ceas and Roder testified that they thought that they had the power to make the contract with the plaintiff at the time it was executed, and that neither of them showed him the by-laws of the defendant, or told him that their authority to appoint agents was limited by said by-laws. There was evidence that the president and Ceas agreed together that an assistant to Roder, the State agent, should be appointed, and that subsequently the above-mentioned written paper was executed. It was also in evidence that in September, 1887, the plaintiff showed this paper to the president of the defendant at the home office in Washington. The officers in charge of the defendant's business in Baltimore employ a person to render services to the defendant; the services are such as were required in the regular course of its business, and were rendered for a period extending from February, 1887, to March, 1888; the officers making this contract for services were designated as defendant's general agent and State agent, and would naturally be understood by the public as having the power to employ persons to assist in the prosecution of its work. Moreover, it was competent for the jury to find from the evidence that the president had actual knowledge of this very contract. It was impossible for the plaintiff to know in what way the powers of the officers in charge of the business of the defendant were limited by by-laws or private instructions. They were held out to the public as having a general authority, which would comprehend the contract in question, and

what they have done within the scope of this authority is, and ought to be, binding on the defendant. The instructions given appear to have left the questions in the case fairly to the jury. We see no repugnancy between the fourth and fifth prayers of the plaintiff. It was competent for the jury to find that the plaintiff was dismissed either on the tenth or thirty-first of March; and these prayers presented these alternate hypotheses. No question is raised on the measure of damages; as the ninth prayer of the plaintiff, and the ninth prayer of the defendant ask for the same instruction substantially on this point, and they were both granted.

*Judgment affirmed.*

(Decided 17th December, 1889.)

